IN RE:   DALE DELEON         Case No. 05-45816
         and
         DAWN MARIE PERKINS,

              Debtors.        Chapter 13

# ORDER DENYING OBJECTION OF MILWAUKEE METROPOLITAN CREDIT UNION TO CONFIRMATION OF THE DEBTORS' PROPOSED CHAPTER 13 PLAN

Creditor Milwaukee Metropolitan Credit Union ("MMCU") has objected to the debtors' proposed Chapter 13 plan. MMCU argues that § 1325 of the recently-enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")–specifically the unnumbered, or "hanging," paragraph at the end of the section–abrogates the U.S. Supreme Court's decision in Till v. SCS Credit Corp., 541 U.S. 645 (2004) for matters involving the interest rate on a car purchased within 910 days of the filing of the petition. For the reasons discussed below, the Court overrules MMCU's objection, concluding that BAPCPA did not abrogate Till and that BAPCPA has not changed the ability of a Chapter 13 debtor to modify the contract interest rate applicable to a secured claim.

Facts

Sometime in October of 2004–the exact date of purchase is not clear from the documents filed, although MMCU contends in its brief that its security interest was

1

created on October 13, 2004–the debtors purchased a 2004 Chevrolet Malibu. They purchased the car with money they borrowed from MMCU. The contract interest rate the debtors agreed to pay at the time of purchase was 17.9%.

On November 21, 2005–thirteen months after purchasing the car, and a little over a month after BAPCPA became effective–the debtors filed the instant Chapter 13 petition. On their schedules, the debtors listed the value of the car as $13,600. On the same day that they filed their petition, the debtors filed their Chapter 13 plan. The plan proposed to pay a "current balance" of $13,600 at an interest rate of "9% declining balance." That rate of interest is the equivalent of the national prime rate, plus 2%.

On December 5, 2005, MMCU filed a proof of claim, listing the value of the car as $13,650.06. The sale contract attached to MMCU's proof of claim reflects that the purchase price of the car was $12,685.00, purchased at a contracted-for 17.9% APR.

On December 28, 2005, MMCU filed an objection to the proposed confirmation of the debtors' Chapter 13 plan. In its objection, MMCU argues that the plan the debtors proposed

> impermissibly attempts to modify Secured Creditor's Claim, secured by a motor vehicle for the personal use of the debtor incurred within 910-days of the Bankruptcy filing, or other thing of value incurred in the 1-year period prior to Bankruptcy filing. 11 U.S.C. § 1325(a)(5) mandates that Secured Creditor's debt be paid as fully secured at the contract rate of interest.

The Court held a hearing on the objection on January 31, 2006. Counsel for the debtors, counsel for MMCU and the Chapter 13 trustee were present. The debtors and MMCU agreed that, because MMCU's objection involved a new law, created by the

BAPCPA amendments and as yet not widely interpreted, they would like the opportunity to submit briefs. The Court agreed.

Both sides submitted briefs, as did the trustee. On February 28, 2006, the parties returned to court for further hearing and argument on the briefs. In essence, MMCU argued that § 1325 of the Bankruptcy Code had been revised by the BAPCPA amendments in such a way as to do away with the practice of "cram downs" of secured vehicle creditors–debtors submitting plans in which the debtor proposes to retain the encumbered property, but seeks to modify the secured claim in a way that the holder of the claim does not accept. MMCU argued that, under the BAPCPA version of § 1325, a court cannot confirm a plan unless the plan proposes to pay the entire amount of certain vehicle debts as fully secured. It further argued that, in requiring the entire amount of the claim to be paid as fully secured, the BAPCPA amendments required the debtor to pay the contracted-for rate of interest for the life of the plan.

In contrast, the debtors argued that, while the new version of § 1325 clearly does away with the practice of dividing, or bifurcating, a debt into secured and unsecured portions, it is silent with regard to whether the debtor may seek to modify the applicable interest rate on that claim. The Court, having reviewed the briefs and heard extensive argument from counsel, and having had the opportunity to ask questions of counsel, reserved ruling.

Analysis

*The World Before BAPCPA*

Prior to October 17, 2005–the effective date of BAPCPA–section 1322(b)(2) of the Code allowed a debtor, in his Chapter 13 plan, to "modify the rights of holders of secured claims" as long as those claims were not secured by the debtor's residence. Section 1325 laid out the requirements which a plan was required to meet before it could be confirmed. Subsection (a)(5) of the old law describes how secured claims should be treated. It gives the debtor three options regarding the secured property. First, the debtor and the claim holder may agree on the treatment to be given the property. Second, the debtor may surrender the property to the claim holder. Third, the debtor may keep the property–with the claim holder retaining the lien–and pay the claim holder a series of payments equal to the amount of the secured claim.

If a debtor chose the third option–to keep the property and pay the secured claim over the life of the plan–the plan had to accomplish two things. First, it had to provide for the claim holder to retain its lien. Second, it had to insure that the value of the claim–as of the effective date of the plan–was not less than the allowed amount of that claim. In other words, the claim holder had to receive, as of the effective date of the plan, the "present value" of the claim.

This "present value" requirement raised a question–in cases where the plan proposes to make payments out over a period of time (rather than in one lump sum), how does a plan compensate a creditor for the risk the creditor takes in accepting a

4

debtor's promise to pay in the future? The answer, of course, was to roll interest into the plan. But what rate of interest was appropriate for addressing the creditor's risk? Should it be the interest rate the debtor contracted for with the creditor when he first purchased the property? Should it be the prime rate of interest plus some percentage? Should it be the rate of interest the creditor might obtain in making a new loan to a similarly-situated, non-bankruptcy borrower?

The Supreme Court answered these questions in its May 2004 decision in Till v. SCS Credit Corporation, 541 U.S. 465 (2004). The court concluded that the "formula" rate of interest–the national prime lending rate, adjusted to acknowledge that bankruptcy debtors pose a greater risk of non-payment than other borrowers–was the rate of interest that should be added into a plan when the plan proposes to make payments over time. Id. at 478-80. While the court declined to prescribe exactly what the adjustment over prime should be, it noted that "[some] courts have generally approved adjustments of 1% to 3% . . . ." Id. (citations omitted).

So–since May 2004, whenever a debtor proposed to pay a secured creditor in installments over the life of the plan, the plan should have included an interest rate of prime plus 1-3%. That has been the practice in this district for the last couple of years.

Interacting with § 1325 in the old law regime was § 506 of the Code. Section 506 instructed parties on how to determine how much of a creditor's claim was, in fact, secured. Under § 506, when a creditor had a lien on property, the creditor's claim was *secured* "to the extent of the value of [that] creditor's interest in the estate's interest in

5

the property," and was *unsecured* "to the extent that the value of [that] creditor's interest . . . is less than the amount of [the] allowed claim." This stripping down of a creditor's claim to the current value of the property, and treating the balance of the debt as an unsecured claim, is often referred to as a "cram down" of the creditor's rights.

So–under the pre-BAPCPA regime, debtors who wished to pay the secured creditor's claim over the life of the plan first looked to § 506 to determine how much of the creditor's claim was secured. Once that determination had been made, the debtor then applied the Till prime-plus interest rate to the secured portion of the claim, and treated the remainder of the debt the same way it treated unsecured creditors.

*The World Under BAPCPA*

The BAPCPA amendments did not change everything about the process described above. Section 1322(b)(2) has not changed a whit–debtors still have the ability to modify a secured claim holder's rights. Section 1325(a)(5) continues to provide the debtor with three options–to agree with the creditor on treatment of the claim, to surrender the property, or to hold on to the property but pay the creditor over the life of the plan.

What has changed are the plan requirements for debtors who choose the third option and hold on to the property. BAPCPA continues to require that the claim holder retain the lien, but now says how long the claim holder gets to retain the lien–until either the underlying debt (as determined by any applicable non-bankruptcy law) is

6

paid or the debtor receives a discharge, whichever comes first. 11 U.S.C. § 1325(a)(5)(B)(i)(I). Further, if the case is dismissed or converted before the plan is completed, the claim holder continues to retain the lien to the extent recognized by applicable non-bankruptcy law. 11 U.S.C. § 1325(a)(5)(B)(i)(II).

BAPCPA also imposes further requirements on how the plan must distribute the periodic payments. Now, the law requires that the periodic payments the debtor proposes to make must be made "in equal monthly installments." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). It also requires that the amount of those installment payments cannot be less than "an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." 11 U.S.C. § 1325(a)(5)(B)(iii)(II).

Finally, the new law adds the twist that brings this case before the Court. Tacked on to the end of § 1325(a)(5), in an unnumbered paragraph that has come to be referred to as the "hanging paragraph," is the following language:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing;

In this brave new world of BAPCPA, then, the Chapter 13 plan of a debtor who buys a car or other vehicle for his personal use within 2½ years of filing for Chapter 13 protection must pay the full amount of the creditor's secured claim as of the date of the petition–period. There can be no more bifurcating of such claims into secured and

7

unsecured portions. The value of the car or other vehicle is not relevant–only the amount of the claim at the time the petition is filed. *See* <u>In re Johnson</u>, 2006 Bankr. LEXIS 266, 2006 WL 270231 (Bankr. M.D. N.C. February 2, 2006).

*Application of BAPCPA to the Current Case*

Because the hanging paragraph in § 1325 does away with the bifurcation of secured claims, the debtors' plan in this case must pay MMCU's entire claim, in full, through the plan. MMCU, as discussed above, has submitted a claim in the amount of $13,650.06–the debtors' plan lists the debt as $13,600. The debtors' proposed plan, then, properly proposes to pay the claim as of the date of the petition was filed in full. To this extent, MMCU agrees.

Where MMCU has a problem with the debtors' plan is with the interest rate the plan proposes. Because the debtors seek, in their plan, to pay the claim in installments over the course of the plan, they must factor an interest rate into the plan to compensate MMCU for its risk in agreeing to future payments. MMCU argues that it contracted with the debtor for a 17.9% interest rate, and that this is the rate of interest that should be paid through the plan. The debtor responds that the rate of interest their plan proposes–9%, or the prime rate plus 2%–is the appropriate rate of interest, because it is the <u>Till</u> rate of interest.

The heart of MMCU's argument is that the Supreme Court's decision in <u>Till</u> no longer applies in 910-day vehicle cases. MMCU agrees that <u>Till</u> tells us how to determine the present value of a secured creditor's claim. It asserts, however, that the

8

BAPCPA amendments have made it unnecessary to determine the present value of a vehicle purchased within 2½ years of the bankruptcy petition. Apparently MMCU believes that, now that debtors are mandated to pay the entire amount of the secured claim as of the date of the bankruptcy filing, there is no longer a need to figure out how to determine the present value of a vehicle when a debtor proposes to pay over time. From this point, MMCU jumps to the conclusion that, while creditors continue to require interest to compensate them for risk when installment payments are involved, the appropriate interest rate under BAPCPA is the contract interest rate–the very interest rate categorically rejected by the Till court. Till, 541 U.S. at 477.

This is a strange argument. The plain language of the BAPCPA version of § 1325 says nothing about interest. It simply states that § 506 no longer applies in 910-day vehicle cases–in other words, that debtors can no longer bifurcate secured claims into secured and unsecured portions. Under BAPCPA, the whole claim, as of the date the petition is filed, is considered secure.

The statute still requires, however, that the value of the property to be distributed on account of the claim be no less than the allowed amount of the claim. In other words, the statute still requires that the creditor be paid the "present value" of the claim as of the effective date of the plan. So, while BAPCPA now tells us what the amount of the secured claim is, it still acknowledges the need for a creditor to be compensated for the risk the creditor assumes in agreeing to future payments.

MMCU's argument that there is no need any longer to determine present value

would, if taken to its logical conclusion, mean that *no* interest should be built into a plan under BAPCPA.  If, indeed, BAPCPA somehow did away with the need to compensate a creditor for risk, then why would a debtor add interest into a plan at all?  Why would she not simply propose to pay the full amount of the claim as of the date the petition is filed, and leave it at that?

That, of course, is not what MMCU seeks.  Despite what it says about there no longer being a need to determine present value under BAPCPA, what MMCU really seeks is to change the way that present value is determined.  It goes to great length to insist that BAPCPA prevents a debtor from stripping down a claim into secured and unsecured portions–and the Court fully agrees.  But it then adds, "The effect of the BAPCPA amendment is to prohibit the strip-down or cram down of purchase-money secured claims that are covered by the amendment–<u>thus requiring their full payment under the contract terms</u>."  (Emphasis in the original)

It is the last four words of this sentence that have no support in the BAPCPA amendments.  It is not clear how MMCU jumps from arguing that BAPCPA requires secured claims to be paid in full as of the date of the petition–in other words, that both owed principal and accumulated interest up until the date of the filing of the petition be paid in full–to the argument that BAPCPA requires that the interest rate *going forward* must be the contract rate.

Contrary to what MMCU argues, BAPCPA does not say anything about preserving the contract negotiated between the creditor and debtor. By putting an end

10

to claim bifurcation and requiring the claim to be paid in full at the time the petition is filed, it certainly implies that the creditor has a right to the contract interest rate *pre-petition*. But it says nothing about whether the creditor has a right to the contract interest rate *post-petition*.

In short, there is nothing in the BAPCPA version of § 1325 that purports to preserve the terms of the purchase contract for the life of a bankruptcy plan. Several courts have looked at this issue since the enactment of BAPCPA, and uniformly they have agreed that the legislative history of the amendments to § 1325 shows no evidence that Congress intended to mandate a contract rate of interest for secured creditors for the life of the plan. *See*, In re Wright, 2006 Bankr. LEXIS 302 (Bankr. D. Ala. February 28, 2006); In re Robinson, 2006 WL 349801 (Bankr. W.D. Mo. February 10, 2006); In re Johnson, *supra*.

> The Wright Court noted that,
>
> Had Congress intended to create a complete safe harbor for the automobile lender with a purchase-money security interest, it could have expressly done so, but it did not. Indeed, the law permits modification of the rights of secured creditors. The only complete safe harbor from any modification is that provided to home mortgagees under 11 U.S.C. § 1322(b)(2).

In re Wright, *supra* at *5-6.

As the Wright court observed, Congress knows well how to prevent a debtor from modifying a creditor's rights. It has, in § 1322(b)(2), expressly forbidden debtors from making any modifications to the rights of a creditor whose claim is secured by a security interest in the debtor's principal residence. Congress could have done the

11

same in § 1325(a)(5), and prohibited debtors in 910-day car cases from modifying the rights of car creditors in any way. Such a prohibition would have achieved the result that MMCU now urges on this Court–it would have locked into place the 17.9% contract interest rate for the life of the debtors' plan.

But this is not what Congress did. Rather, it preserved for the creditor all owed principal and accumulated interest up to the date the petition is filed–nothing more. Creditors still must have some protection against risk in installment plans, and nothing in BAPCPA changes the fact that the protection they get is the <u>Till</u> interest rate.

Contrary to what MMCU implies in its brief, the Court's conclusion–and that of the other courts which have decided this issue–does not leave the creditor in the same position it would have been in pre-BAPCPA. Now, the creditor needn't worry that the interest accumulated pre-petition will be stripped down to an unsecured status. Further, BAPCPA now requires that the plan pay the creditor in equal monthly installments–protecting the creditor from any decrease in the value of the vehicle over the course of the plan. And it requires that those payments must be large enough to provide adequate protection to the secured creditor. All in all, BAPCPA leaves vehicle lenders–who, according to MMCU, were "continuously brutalized" by cram downs pre-BAPCPA–better protected than they were under the Code.

Conclusion

This Court joins the courts in Alabama, Missouri and North Carolina in rejecting

the argument that the BAPCPA amendments somehow abrogated Till in 910-day car cases. The debtor's plan in this case, which proposes to pay the full amount of MMCU's claim as of the date the petition was filed with an added interest rate of prime plus 2%, is entirely appropriate.

Accordingly, the Court hereby **DENIES** the objection of Milwaukee Metropolitan Credit Union to the debtors' proposed Chapter 13 plan.

**SO ORDERED** this 21st day of March, 2006.

PAMELA PEPPER
United States Bankruptcy Court

Cc: Dale Deleon and
Dawn Marie Perkins
Debtors

Attorney James Stanek
Counsel for the debtors

Attorney Gerald J. Mayhew
Counsel for MMCU

Chapter 13 Trustee

Office of the U.S. Trustee

13